IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,     )<br>                    Plaintiff,     )<br>                                      )<br>v.                                 )<br>                                      )<br>OREN PARIS III,                )<br>                    Defendant.  ) | Case No. 5:17-CR-50010-002 |

**<u>ADDENDUM TO DEFENDANT OREN PARIS III'S MOTION TO DISMISS</u>**

    The Merriam-Webster dictionary defines the term "outrageous" succinctly as "going beyond all standards of what is right or decent." The Eight Circuit Court of Appeals complicates somewhat the common definition with a more precise, narrow and technical precision, reserving the term "outrageous" for instances "when agents' conduct violates 'that fundamental fairness, shocking the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment.'" *United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012), citing *United States v. Russell*, 411 U.S. 423, 432 (1973). Likewise, in evaluating instances of such conduct by government agents that from a lay perspective may appear outrageous, the courts further focus on whether such conduct "falls within the narrow band of the most intolerable government conduct." *Id*. In *United States v. Rochin*, it was forcibly removing contraband from a suspect's mouth and subsequently having his stomach pumped that met the standard. 342 U.S. 165 (1952). Justice Frankfurter, writing for the Court, referred to such conduct as more than that which would "offend some fastidious squeamishness or private sentimentalism about combatting crime to energetically. This is conduct that shocks the conscience." *Id* at 172.

    Less obviously intrusive conduct, when paired with bad faith of the government actors as in instances of the intentional failure to preserve or destruction of evidence, has been found

equally conscience shocking and a violation of due process. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1989). The Court in *Youngblood* exonerated the State of Arizona after finding that failure to preserve clothing and perform tests on semen samples in a sexual assault investigation which resulted in lost, potentially useful evidence for the defense, did not violate Due Process without a showing of bad faith, i.e., conduct that cannot be styed as unintentional or simply negligent. *Id*. What a defendant needs to show, and what was lacking in *Youngblood*, is the combination of the factors of "failure to preserve potentially useful evidence" coupled with intentional misconduct, or "bad faith" on the part of government actors, necessary to show a "denial of due process of law." *Id*. *Bugh*, likewise, involving an evaluation of an instance of destruction of evidence in the form of erasure of audio recordings of telephone conversations between a confidential informant and the defendant that were "potentially useful" to the defense, found that the lack of bad faith due to the avowed "accidental" erasure, failed, therefore, to rise to the level of a due process violation. *Bugh*, *supra*, at 894-95. Rare, indeed, are the instances in which the conduct of government agents been deemed sufficiently outrageous to require dismissal of an indictment based on a violation of Due Process, i.e., "the narrow band of the most intolerable government conduct." Id. But in most cases, in all Circuits, the touchstone is bad faith.

   Counsel for Dr. Paris has been made aware of just such an occurrence of bad faith misconduct on the part of the government, and which affirms the allegations made earlier in his Motion to Dismiss. By email dated December 15, 2017 from AUSA Aaron Jennen, on behalf of USA Kenny Elser, counsels for all defendants were made aware that on the very morning the undercover computer, or "UC," belonging to FBI Special Agent Robert Cessario was to be presented to the FBI Computer Analysis and Response Team for forensic examination regarding

the Dropbox file information that had been the subject of intense debate between the prosecution and the defense, said laptop had been "wiped."[12]  Wiped, cleaned, deleted, or in the words of the FBI, "erased/formatted with a file system/partition on 12/07/17 at 8:00 a.m." such that "[n]o audio files or Dropbox artifacts were recovered . . . ."  The existence of such information was the debated topic of Section 3 of Dr. Paris's Motion to Dismiss (Doc. 168), the subject of his Motion for Contempt (Doc. 132) and other defense motions.  Such also was the basis by which the December 4, 2017 trial setting was terminated and reset after Dr. Paris agreed, after considerable prayer and deliberation, to waive his Speedy Trial rights, and the promise of prompt production of the results of said analysis forming the basis to the defense consenting to continuation of the December 14, 2017 motion hearing.  Therefore, what we have before us is clear, willful destruction of evidence.

As reported by Mr. Jennen, Mr. Cessario attempts to explain away his wiping of his laptop by claiming that either it contained ransomware, games his children had downloaded, or embarrassing personal medical information.  But Mr. Cessario also stated that he had "wiped" his computer on "at least three occasions," November 3, 2016, March 2017 and again on December 7 of this year, begging the question that if he had wiped his computer previously to shield personal information from his prying employer, why such contraband still existed and why he subsequently added more given his awareness of the apparent impropriety.  Equally curious is why Mr. Cessario was allowed to maintain possession of his laptop once the decision had been made by the government to perform the forensic analysis, while the importance of retention of said information had been made readily apparent to the government on November 30, if not

---

[1] The government would tag said communication as protected discovery material.  Counsel is at a loss as how an email advising the defense of the destruction of *Brady* materials is to be itself considered discovery.

[2] Said email attached hereto and incorporated herein by reference.

earlier. To the credit of Mr. Cessario, if any can be given under the circumstances, he lays the foundation that the deletion of files from his computer was not inadvertent but intentional. Given the stakes, however, the professed reasons for engaging in the wiping of his computer could not possibly have risen to the level of seriousness as would the apparent intentional destruction of files, straining credulity, and the resulting attempt to steer clear of allegations of bad faith unavailing. The importance of the information that would have been contained on Mr. Cessario's laptop exceeds that of simply when and whether he received, added or deleted Dropbox files containing the subject audio recordings. Also pertinent is when individual audio recordings were turned over to Mr. Cessario, when and to whom he copied said recordings from either Mr. Neal or Mr. Wilkinson, to Messrs. Munns, Elser, Mulryne, etc., whether that be beginning in June and throughout last summer piece-meal or in November in bulk as the government attests, and when and how any information gained from said recordings assisted the government in prosecuting this case and others,[3] and as it applies to the intrusion by the government into attorney-client communications between Dr. Paris and his counsel and the defense strategy of all three defendants. The misconduct all brings into question all of the evidence thus far produced, and the existence of any evidence that has not been produced and may have existed on Mr. Cessario's laptop in November of 2016 and March 2017, both of which dates occur during the pendency of this investigation. All of which information shall remain forever buried due to the intentional destruction of said evidence.

 *Brady v. Maryland* requires mandatory disclosure by the government to the defense of "evidence favorable to an accused." 373 U.S. 83 (1963). The failure to do so violates due

---

[3] Counsel will standby with interest to observe the effect on other cases in which he was involved Mr. Cessario's deliberate wiping of his UC will have, assuming he was involved in other investigations. No effect on those prosecutions would suggest that other evidence was saved on alternative media prior to the alleged wiping of this particular laptop.

process "irrespective of the good faith or bad faith of the prosecution." *Id*. The government was made painfully aware of the importance the defense invested in the status of the Dropbox recordings and the exculpatory evidence that it perceived to be gained from further investigation of the issue. The failure to immediately take possession of the Mr. Cessario's laptop was, at best, grossly negligent; Mr. Cessario's taking advantage of that lapse of judgment was clearly intentional; the wiping of the computer is arguably criminal destruction of evidence.

18 U.S.C. § 2232(a) defines the offense of Destruction or removal of property to prevent seizure as follows:

> Whoever, before, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property sunder its lawful custody and control, shall be fined under this title or imprisoned not more than five years, or both.

Once the government knew of the significance of the information contained on Mr. Cessario's laptop, arguably when discussed on November 30, but surely on December 1, 2017, therafter the intentional wiping of said laptop meets the definition of 18 U.S.C. § 2232(a). It is impossible at this point to quantify to any reasonable degree of certainty the prejudice incurred upon Dr. Paris by the intentional wiping of Mr. Cessario's laptop other than to assess the impact of the information that was lost and has been previously discussed and the apparent bad faith by which said evidence was destroyed. But the calculation that must have taken place, the cost-benefit analysis that undoubtedly occurred, weighing the revelation of whatever was on the laptop against the commission of destruction of evidence or obstruction of justice, suggests that something much more serious than personal embarrassment was at issue. Due to said destruction the value to the defense of whatever was on there is forever lost, and questions as to what

whomever knew and when they knew it are rendered unanswerable. Nevertheless, the commission of crimes in furtherance of the prosecution of alleged crimes cannot be sanctioned. That such behavior is intolerably outrageous resulting in prejudice to Dr. Paris's due process rights cannot be gainsaid and the only conceivable and fair remedy is dismissal.

WHEREFORE, Defendant Dr. Oren Paris III, having met his burden of demonstrating bad faith on the part of the government resulting in prejudice, prays that the Court sustain his Motion to Dismiss, and for any such other and further relief the Court deems just and proper.

Respectfully submitted,

STORY LAW FIRM, PLLC

by /s/ Gregory F. Payne
Travis W. Story (2008274)
Gregory F. Payne (2017008)
438 E. Millsap, Suite 103
Fayetteville, AR  72703
(479) 473-3700
Fax (479) 473-3701
travis@storylawfirm.com
greg@storylawfirm.com

*ATTORNEYS FOR OREN PARIS III*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Addendum to Motion to Dismiss, was served by CM/ECF this 18th day of December, 2017, to the following:

Kenneth Elser
*United States Attorney*

Sean F. Mulryne
*U.S. Department of Justice*

Patrick J. Benca
*Attorney for Jon Woods*

Shelly Hogan Koehler and
Chad L. Atwell

*Attorneys for Randell Shelton*

                                              by /s/ Gregory F. Payne
                                              Gregory F. Payne