IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                      CASE NO. 5:17-CR-50010-2 & 3

OREN PARIS, III and
RANDELL G. SHELTON, JR.                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Motions for Release Pending Appeal filed by Defendants Oren Paris, III (Doc. 502) and Randell G. Shelton, Jr. (Doc. 500), as well as the Government's Responses (Docs. 505, 506) to both Motions. For the reasons given below, both Motions are **DENIED**.

### I. BACKGROUND

Mr. Paris and Mr. Shelton were each charged with fifteen felony counts of honest services fraud for bribing their codefendant Jonathan E. Woods while he was a senator in the Arkansas General Assembly.[1] See Doc. 74. Essentially, the Government alleged that Mr. Shelton used his company, Paradigm Strategic Consulting, to funnel cash bribes to Mr. Woods from Mr. Paris, who was president of Ecclesia College. In exchange for these bribes, Mr. Woods was alleged to have used his office to steer public grant monies from the state's General Improvement Fund ("GIF") to Ecclesia. On April 8, 2018, only five days before the trial in this matter began, Mr. Paris entered a guilty plea to one of the

---

[1] Mr. Woods was charged with the same fifteen felony counts, but also with one count of money laundering, and with one additional count of honest services fraud regarding a separate bribery scheme that did not involve Mr. Paris or Mr. Shelton. See Doc. 74.

1

counts against him. *See* Doc. 321. Then on May 3, a jury convicted Mr. Shelton on twelve counts.[2] *See* Doc. 378.

Mr. Shelton was sentenced on September 6 to serve seventy-two months in the custody of the Federal Bureau of Prisons ("BOP"),[3] to be followed by three years of supervised release. *See* Doc. 474. The Court also imposed monetary penalties on Mr. Shelton of $660,698.00 in restitution and a $1,200.00 special assessment. *See id.* Mr. Shelton's Judgment was entered on the docket five days later, *see id.*, along with a separate Money Judgment of $664,000.00, *see* Doc. 476. As for Mr. Paris, he was sentenced on September 12 to serve thirty-six months in the BOP,[4] to be followed by three years of supervised release, and to pay $621,500.00 in restitution along with a $100.00 special assessment. *See* Doc. 481.

Mr. Shelton and Mr. Paris have both been released on bond throughout these proceedings. *See* Docs. 21, 25, 323, 381. When the Court imposed sentence on Mr. Shelton, it ordered him to report by no later than 1:00 p.m. on Monday, October 8, 2018 to the institution designated by the BOP where he would begin his term of imprisonment. *See* Doc. 474, p. 2. It imposed a deadline on Mr. Paris of 1:00 p.m. on Wednesday, October 10, 2018 to do the same. *See* Doc. 481, p. 2. The Court permitted each man to remain out on bond until his respective report date. Both men have filed Notices of Appeal

---

[2] The jury also convicted Mr. Woods on fifteen counts. *See* Doc. 378.

[3] This was a downward variance from the advisory Sentencing Guidelines range of 121–151 months, which was based on a total offense level of 32 and a criminal history category of I.

[4] This was a downward variance from the advisory Sentencing Guidelines range of 87–108 months, which was based on a total offense level of 29 and a criminal history category of I.

to the United States Court of Appeals for the Eighth Circuit. *See* Docs. 495, 501. And on September 28, both men filed Motions for Release Pending Appeal, asking this Court to allow them to remain out on bond until their appeals are resolved. The Government filed a Response in opposition to Mr. Shelton's Motion yesterday, and today it filed a Response taking no position with respect to Mr. Paris's Motion.[5] Thus, both Motions are now ripe for decision.

Below, the Court will first recite the applicable legal standard. Then the Court will discuss the substance and merits of the two pending Motions.

## II. LEGAL STANDARD

A person who has been found guilty of an offense and sentenced to a term of imprisonment must be detained during the pendency of any appeal he has filed, unless the Court finds:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

    (i) reversal,

    (ii) an order for a new trial,

    (iii) a sentence that does not include a term of imprisonment, or

    (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

---

[5] In its Plea Agreement with Mr. Paris, the Government agreed "not to oppose the Defendant's request for release pending appeal . . . if the Court finds that the Defendant otherwise qualifies for such release." *See* Doc. 321, ¶ 24.

18 U.S.C. § 3143(b)(1).

The Eighth Circuit has explained that this statute's requirement of a "substantial question" refers to "a close question or one that could go either way." *See United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir. 1985). Elaborating on this, the Eighth Circuit observes that "[i]t is not sufficient to show simply that reasonable judges could differ (presumably every judge who writes a dissenting opinion is still 'reasonable') or that the issue is fairly debatable or not frivolous." *Id.* at 1234. However, "the defendant does not have to show that it is likely or probable that he or she will prevail on the issue on appeal." *Id.*

The Eighth Circuit has further explained that the statute's requirement that reversal or new trial be likely[6] means that the defendant must "show that the substantial question he or she seeks to present is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Id.* In deciding this question, the Court "must assume that the substantial question presented will go the other way on appeal and then assess the impact of such assumed error on the conviction." *Id.*

Here, as a threshold matter, the Court finds by clear and convincing evidence that neither Mr. Paris nor Mr. Shelton is likely to flee or pose a danger to the safety of any other person or the community if released. The Court also finds that their appeals are not for the purpose of delay. Accordingly, the legal standard applicable to each of their Motions collapses to a two-pronged analysis. To remain out on bond pending appeal,

---

[6] Neither Mr. Paris nor Mr. Shelton contends that any issues on appeal would present substantial questions that are likely to impact their sentences in the manner contemplated by 18 U.S.C. § 3143(b)(1)(B)(iii)-(iv).

4

Mr. Paris and Mr. Shelton must each show: (1) that his appeal will present a close question that could go either way; and (2) that if this close question is decided in his favor, it is more likely than not that reversal or a new trial will result.

## III. DISCUSSION

Below, the Court will first discuss the issues raised in Mr. Paris's Motion. Then the Court will address the issues raised in Mr. Shelton's Motion.

### A. Mr. Paris's Issues for Appeal

Mr. Paris's Motion presents two issues. His first argument is that he does not even need to identify any substantial question for appeal that is likely to result in reversal or a new trial. Rather, Mr. Paris points to the Government's promise in his Plea Agreement "not to oppose [Mr. Paris]'s request for release pending appeal pursuant to 18 U.S.C. § 3143, if the Court finds that [Mr. Paris] otherwise qualifies for such release," see Doc. 321, ¶ 24, and he argues that the plain language of this clause precludes the Court from conducting any inquiry into whether a substantial appellate question exists. The Court disagrees for two reasons. First, the Court believes the conditional language in the quoted paragraph plainly refers to this Court's independent obligation to determine whether Mr. Paris qualifies for continued release under 18 U.S.C. § 3143. Second, Mr. Paris himself acknowledged when he signed his Plea Agreement "that nothing in this Agreement binds the District Court to . . . make any specific finding of fact . . . [or] accept any stipulation of the parties as contained in this Plea Agreement . . . ." See Doc. 321, ¶ 31.

Mr. Paris's other argument is that, in the alternative, a substantial question is presented on appeal by this Court's refusal to dismiss the indictment after it found that an

FBI agent on this case named Robert Cessario had destroyed potentially useful evidence. This Court has already rejected that argument from Mr. Woods in its Opinion and Order at Doc. 409. The Court rejects Mr. Paris's argument now for largely the same reasons. However, the Court would like to insert one ultimately inconsequential caveat. Specifically, this Court feels the need to address what the standard of review for this issue will be on appeal.

In its Order denying Mr. Woods's Motion for Release, this Court stated that "when Mr. Woods eventually argues on appeal that dismissal of the indictment is the only proper remedy for Agent Cessario's laptop wipe, the proper question for the Eighth Circuit to answer will be whether this Court abused its discretion by refusing to dismiss the indictment." (Doc. 490, p. 11). This Court reached that determination because the Eighth Circuit stated in the 1992 case of *United States v. Manthei* that "absent flagrant and prejudicial prosecutorial misconduct, this court will find that the district court's dismissal of an indictment is an abuse of its discretion." 979 F.2d 124, 126–27 (8th Cir. 1992). According to Westlaw, as of the present date *Manthei* has been cited 287 times (presumably for many different propositions), and not a single one of those citations constitutes negative treatment.

However, Mr. Paris's Motion accurately quotes a 2010 Eighth Circuit case called *United States v. Webster*, of which this Court was previously unaware, for the proposition that "[t]he district court's denial of a motion to dismiss the indictment because of the destruction of evidence is reviewed de novo." 625 F.3d 439, 446 (8th Cir. 2010). According to Westlaw, as of the present date *Webster* has been cited 136 times (also

presumably for many different propositions), and not a single one of those citations constitutes negative treatment.

This Court is very puzzled by this state of affairs and will readily concede that it now has no idea what the standard of review for this issue will be on appeal, because the Eighth Circuit appears to have produced two parallel but conflicting tracks of caselaw on the matter. Perhaps the most literal and generous method of harmonizing those two cases is to say that this Court's refusal to dismiss the indictment is reviewed *de novo* to the extent it was premised on the finding that Agent Cessario destroyed potentially useful evidence, and for abuse of discretion to the extent it was premised on the finding that Agent Cessario did so in bad faith. But that strikes this Court as an incoherent way of going about the matter, and this Court suspects the Eighth Circuit will simply need to pick one line of cases and overrule or at least explicitly distinguish the other.

On the one hand, *Webster* is obviously the more recent case. But on the other hand, its articulation of the standard of review appears to be the result of a gradual and inadvertent decades-long game of "telephone" that never actually took *Manthei* into account. *Webster* cites the 2009 case of *United States v. Williams*, an appeal from a denial of a motion to dismiss the indictment "on the ground that the firearm seized in the search of [the defendant's] home was destroyed before trial, in violation of the Fifth Amendment." 577 F.3d 878, 882 (8th Cir. 2009). *Williams* simply observed that "[w]e review his motion to dismiss the indictment de novo," without ever explicitly connecting the standard of review to the issues raised in the motion, and cited the 2000 case of *United States v. Novak*, 217 F.3d 566, 570 (8th Cir. 2000). See 577 F.3d at 882. *Novak*, for its part, involved an appeal from a denial of a motion to dismiss that dealt with purely

legal arguments having nothing to do with destruction of evidence or governmental misconduct, see 217 F.3d at 570–73, and relied on the 1999 case of *United States v. Smith*, 171 F.3d 617, 619 (8th Cir. 1999) for its *de novo* standard of review, see 217 F.3d at 570. *Smith*, like *Novak*, had nothing to do with destruction of evidence or governmental misconduct, see 171 F.3d at 619, and relied for its standard of review on a 1997 case called *United States v. Nattier*, which was concerned with a double-jeopardy issue that had nothing to do with destruction of evidence or governmental misconduct, see 127 F.3d 655, 657 (8th Cir. 1997). *Nattier* got its standard of review from *United States v. Sykes*, which was another double-jeopardy case not involving destruction of evidence or governmental misconduct. *See* 73 F.3d 772, 773 (8th Cir. 1996). *Sykes* got its standard of review from the 1995 case of *United States v. Petty*, which stated "[w]e review a district court's denial of a motion to dismiss an indictment on double jeopardy grounds *de novo*." *See* 62 F.3d 265, 267 (8th Cir. 1995). And *Petty* relied on *United States v. Ivory*, which likewise stated that "the district court's denial of a motion to dismiss on double jeopardy grounds is subject to *de novo* review." 29 F.3d 1307, 1310 (8th Cir. 1994).

To summarize, then: in the early to mid 1990s, the standard of review that the Eighth Circuit applied on motions to dismiss indictments clearly depended on what issues were raised in those motions (*e.g.*, double-jeopardy issues were reviewed *de novo*, while governmental misconduct issues were reviewed for abuse of discretion), which makes eminent sense to this Court, given that questions of particularized judgment typically are committed to trial courts' discretion while purely legal questions are not. But then at some point along the way, some panels of the Eighth Circuit began citing issue-specific standards of review for the broader proposition that motions to dismiss in general are all

governed by the same standard of review, without reference to earlier conflicting authority. And then, more recently still, some panels of the Eighth Circuit began citing those broader and more recent holdings for narrower, issue-specific standards of review that directly conflicted with the original precedent, but again without reference to that original precedent.

Fortunately, it is not this Court's task to sort all of that out. And importantly, it ultimately makes no difference to this Court's analysis of the instant Motions whether its refusal to dismiss the indictment in this case will be reviewed *de novo* or for abuse of discretion. Either way, this Court believes the issue of whether dismissal of the indictment was proper here does not present a "substantial question" or a "close call," because there is certainly no escaping the United States Supreme Court's explicit instruction, which this Court has already quoted several times in previous orders, that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, *even though the violation may have been deliberate*." *United States v. Morrison*, 449 U.S. 361, 365 (1981) (emphasis added). And if that were not clear enough, the *Morrison* Court immediately went on to state that "[t]his has been the result reached where a Fifth Amendment violation has occurred," and that the same is also true for Fourth and Sixth Amendment violations. *See id.* at 365–67. So when Mr. Paris and his codefendants argue that the propriety of dismissing an indictment turns on whether a constitutional violation was deliberate, they are simply incorrect. The Supreme Court has explicitly held otherwise in no uncertain terms, and as this Court noted in its Order on Mr. Woods's Motion for Release Pending Appeal, "the Eighth Circuit will be no more free to disregard that binding precedent on appeal than this Court was at trial." *See* Doc. 490, p. 10.

So the critical issue here is not bad faith or intent; rather, the critical issue here is whether the constitutional violation caused "demonstrable prejudice, or substantial threat thereof." *Morrison*, 449 U.S. at 365. That is an inherently contextual and fact specific inquiry. This Court spent seventeen pages half a year ago explaining why the defendants ultimately suffered no prejudice from Agent Cessario's misconduct. This Court sees no more need to rehash that analysis now than it saw in its Order on Mr. Woods's Motion nearly two weeks ago. The Court will simply observe here that it was these defendants' burden to show prejudice, *see United States v. Larsen*, 427 F.3d 1091, 1094–95 (8th Cir. 2005), that they failed to carry their burden, and that this Court's factual findings on the matter will be reviewed for "clear error," *see United States v. Nieman*, 520 F.3d 834, 838 (8th Cir. 2008). Readers interested in the finer details are referred to pages 30 through 46 of this Court's Opinion denying these defendants' motions to dismiss for governmental misconduct, which can be found at Doc. 297 on this docket.

Having rejected both of the arguments raised in Mr. Paris's Motion, the Court will deny it. The Court turns now to Mr. Shelton's Motion.

### B. Mr. Shelton's Issues for Appeal

Mr. Shelton has identified five issues that he intends to argue on appeal and that he contends present "substantial questions" that are likely to result in reversal or a new trial. One of those issues is this Court's refusal to dismiss the indictment after it found that Agent Cessario had destroyed potentially useful evidence, which was addressed in the preceding subsection of this Order, as well as in this Court's Opinion and Order at Doc. 490, denying Mr. Woods's Motion for Release Pending Appeal. Mr. Shelton's

argument on that issue is rejected for the same reasons the Court has rejected his two codefendants' arguments on it.

Two other issues identified by Mr. Shelton concern this Court's delivery of an *ex parte* instruction to the jury,[7] and this Court's exclusion of evidence regarding Agent Cessario's misconduct from the jury trial in this case. The Court also rejected these two arguments in its Opinion and Order at Doc. 490, denying Mr. Woods's Motion for Release Pending Appeal. The Court finds Mr. Shelton's arguments on these points unpersuasive for the same reasons it found those arguments unpersuasive when Mr. Woods made them. Rather than repeating or extensively quoting the analysis this Court performed in its Opinion and Order on Mr. Woods's Motion, the Court will simply reference that Opinion and Order, which can be found at Doc. 490, and will state that the Court fully incorporates and adopts that Opinion and Order's reasoning on those issues here.

Mr. Shelton's remaining two appellate issues concern: (1) instructions that this Court gave the jury regarding the constitutionality of the GIF program; and (2) this Court's denial of Mr. Shelton's motions to sever his trial from Mr. Woods's. The Court will explore each of these issues below. Then the Court will finally turn to several other miscellaneous matters raised in Mr. Shelton's Motion for Continued Release.

### 1. Jury Instructions Regarding Constitutionality of GIF

There were two occasions during the trial when the Court instructed the jury that although they would hear, or had heard, evidence that the Arkansas Supreme Court

---

[7] As discussed at much greater length in this Court's Order on Mr. Woods's Motion for Release Pending Appeal, the jury instruction at issue was several paragraphs long, and the only parts of the instruction that could reasonably be characterized as *ex parte* were two spots where the words "general description" were changed to "summary" and the words "generally described" were changed to "summarized." See Doc. 409, pp. 21–29.

eventually declared unconstitutional the GIF process that was in place in 2013, the jury should not consider that fact as evidence of the defendants' guilt or innocence. Each time, the Court explained to the jury that it was admitting such evidence only for the limited purpose of providing historical context for how the GIF process evolved, and that whether the GIF process violated the Arkansas Constitution had no bearing on whether the defendants were guilty or innocent of the crimes charged.

In his Motion, Mr. Shelton frames this argument as an objection to the Court's instructions to the jury. But the Court does not understand what the basis for this objection would be; the instruction, after all, was *curative* in nature and essentially told the jury that although they either would hear or had already heard witnesses testify about an Arkansas Supreme Court ruling on the constitutionality of the GIF process, they should *not hold that testimony against Mr. Shelton*. Rather, the objection that Mr. Shelton actually made during trial was to the admission of such testimony in the first place on the grounds that it was irrelevant and substantially more prejudicial than probative—to such a degree that Mr. Shelton believed it would be impossible for any limiting instruction to cure the prejudice. *See* Doc. 451, pp. 18–27. This objection was made under Fed. R. Evid. 401 through 403. *See id.* at 20, 22; *see also* Doc. 369, pp. 8–18, 40–44.

Assuming Mr. Shelton's objections were timely,[8] this Court's ruling on the admissibility of that testimony will be reviewed on appeal for abuse of discretion. *See United States v. Gustafson*, 528 F.3d 587, 590 (8th Cir. 2008). But even assuming further that a "substantial question" is presented by whether this Court abused its discretion in

---

[8] The Government argues that Mr. Shelton waived this objection, *see* Doc. 505, p. 13, which is an issue that this Court need not reach for purposes of the instant Motion.

admitting such testimony, the Eighth Circuit will not reverse a conviction on the basis of an improper evidentiary ruling unless "the ruling affected substantial rights or had more than a slight influence on the verdict." See id. at 591; see also Fed. R. Crim. P. 52(a). Given that during the entire month-long trial the jury heard only two references to the Arkansas Supreme Court case in question, and given that a curative instruction accompanied each such reference to the effect that the jury should not hold those references against Mr. Shelton, this Court finds it very unlikely the Eighth Circuit would find this Court's ruling on the matter affected substantial rights or had more than a slight influence on the verdict—especially since "[a] jury is presumed to follow its instructions." See United States v. Thomas, 877 F.3d 1077, 1079 (8th Cir. 2017).

### 2. Denial of Mr. Shelton's Motions to Sever

The sole remaining appellate issue Mr. Shelton has identified that he contends will present a substantial question likely to result in reversal or a new trial is this Court's denial of his motions to sever. Mr. Shelton filed *two* motions to sever in this case. His first one, filed on November 8, 2017, was premised on the proposition that if the Government were to introduce prior confessions or inculpatory statements by Mr. Woods at trial, a conflict would arise between Mr. Shelton's Sixth Amendment right to confront witnesses against him and Mr. Woods's Fifth Amendment right not to testify. See Doc. 171. The Court denied that motion because the Government had indicated it would not attempt to introduce any testimonial statements by Mr. Woods at trial, see Doc. 215, and indeed, no such statements were introduced at trial. Understandably, then, Mr. Shelton does not identify that particular basis for severance as presenting a substantial issue on appeal.

As for Mr. Shelton's second motion to sever, it was filed on April 2, 2018—nearly a month and a half after the filing deadline of February 21. See Docs. 311, 312. Accordingly, this Court found he had waived all but one of the arguments in that motion. See Doc. 317, pp. 9–10. The one argument the Court *did* reach concerned sensational media attention that had recently been given to an alleged murder-for-hire plot by one of Mr. Woods's uncharged co-conspirators in a separate bribery scheme that did not involve Mr. Shelton, Mr. Paris, or Ecclesia. See *id.* at 10. That separate bribery scheme involved bribes paid to Mr. Woods in exchange for directing GIF grants to an entity called AmeriWorks, and it formed the basis for Count 4 against Mr. Woods—the only Count in this case that involved the AmeriWorks scheme. Mr. Shelton was concerned that the aforementioned media attention would overwhelm the issues pertaining to him at trial. The Court rejected that argument, observing that it was very unlikely any evidence about the alleged murder-for-hire plot would be introduced at trial, and expressing confidence that a thorough and effective *voir dire* of potential jurors would adequately mitigate the risk of any media-borne prejudice infiltrating the jury. *Id.* And indeed, no such evidence was introduced, and a thorough and effective *voir dire* was conducted. In Mr. Shelton's instant Motion, he does not identify this particular argument as presenting a substantial question on appeal.

Instead, Mr. Shelton's instant Motion relies entirely on arguments that this Court found he had waived when denying his second motion to sever. Those arguments are essentially that Mr. Shelton suffered spillover prejudice from evidence at trial that pertained only to Mr. Woods, either with respect to the AmeriWorks scheme (which did not involve Mr. Shelton), or with respect to the Ecclesia scheme (which did involve Mr.

Shelton). Because Mr. Shelton waived these arguments, he will have to show on appeal not only that this Court abused its discretion in denying his second motion to sever, but also that he suffered "prejudice affecting his . . . substantial rights" as well as "some extraordinary reason" for reversal despite his failure to timely raise these arguments. *See United States v. Munoz*, 894 F.2d 292, 294 (8th Cir. 1990).

This Court does not believe a "substantial question" or "close call" is presented by the issue of whether Mr. Shelton's joint trial with Mr. Woods caused him to suffer spillover prejudice affecting his substantial rights. Every single time the Government introduced evidence of the AmeriWorks scheme at trial, this Court promptly instructed the jury that it should consider that evidence *only* with respect to Mr. Woods and *not* with respect to Mr. Shelton. Again, "[a] jury is presumed to follow its instructions." *See Thomas*, 877 F.3d at 1079. And as for evidence received at trial regarding Mr. Woods's role in the Ecclesia scheme—most of it would have been just as admissible against Mr. Shelton at a severed trial as it was at the joint trial. Mr. Shelton, Mr. Paris, and Mr. Woods were all charged in Count One with *conspiracy* to commit honest services fraud; and for the Government to meet its burden on this Count it "was required to offer evidence of the existence of a conspiracy" and of Mr. Shelton's "intention to be a participant in it." *Cf. United States v. Maxwell*, 643 F.3d 1096, 1100–01 (8th Cir. 2011) (discussing proof of the existence of a conspiracy in the context of Fed. R. Evid. 404(b)). Voluminous evidence of Mr. Woods's role in the Ecclesia conspiracy would have been introduced in Mr. Woods's absence from a severed trial of Mr. Shelton, just as voluminous evidence of Mr. Paris's role in the Ecclesia conspiracy was introduced in Mr. Paris's absence from the joint trial of Messrs. Woods and Shelton following Mr. Paris's guilty plea. The absence of a "substantial

question" here is especially stark since "[t]he presumption against severing properly joined cases is strong," see *United States v. Delpit*, 94 F.3d 1134, 1143 (8th Cir. 1996), and defendants seeking severance accordingly carry "a heavy burden," see *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010).

### 3. Miscellaneous Matters

Aside from the foregoing arguments that Mr. Shelton contends present substantial questions on appeal, Mr. Shelton's Motion for Continued Release also raises three other miscellaneous grounds for the requested relief. First, he argues that because this Court permitted *Mr. Paris* to enter a conditional guilty plea pursuant to a plea agreement under which the Government would not oppose *Mr. Paris's* request for continued release, this Court must find that *Mr. Shelton's* appeal will present a substantial question. None of the authorities Mr. Shelton cites actually supports this proposition, and this Court rejects it. The Government did not promise not to oppose *Mr. Shelton's* continued release during appeal, and even with respect to Mr. Paris, the Government's promise in no way relieves this Court of performing its own independent analysis of whether continued release is proper. See Doc. 321, ¶ 24 ("The United States agrees not to oppose [Mr. Paris]'s request for release pending appeal pursuant to 18 U.S.C. § 3143, *if the Court finds that [Mr. Paris] otherwise qualifies for such release*." (emphasis added)).

Second, Mr. Shelton contends that "[e]ven if the Court were to question the ability of any of the errors, in isolation, to influence the verdict, . . . the cumulative effect of the errors cannot be considered harmless and could easily have been 'the difference between conviction and acquittal.'" See Doc. 500, p. 18 (quoting *United States v. Bledsoe*, 531 F.2d 888, 892 (8th Cir. 1976)). The Court disagrees. Setting aside disagreements

between Mr. Shelton and this Court over whether and to what extent this Court may have erred over the course of this case's month-long trial and more than 500 docket entries—when finding reversible cumulative error in *Bledsoe*, the Eighth Circuit observed that "[t]he evidence of guilt was not overwhelming." 531 F.2d at 892. That cannot be said here. This Court already remarked at Mr. Shelton's sentencing on the overwhelming nature of the evidence against him, and in denying Mr. Shelton's motion for a new trial found that "the evidence weighs heavily in favor of the verdict." *See* Doc. 422, p. 23. Thus, this Court does not find it likely that cumulative error will result in reversal or a new trial for Mr. Shelton on appeal.

Finally, Mr. Shelton argues that the recent birth of his daughter presents an "exceptional circumstance of new parenthood" that justifies permitting him to remain out on bond during his appeal. *See* Doc. 500, p. 19 (citing 18 U.S.C. § 3145(c)). Although the undersigned's heart goes out to Mr. Shelton and his family, this Court believes it cannot be said that fatherhood is an "exceptional circumstance" among criminal defendants subject to incarceration. To find otherwise would require continued release during appeal of countless other criminal defendants under circumstances clearly not contemplated by the Bail Reform Act of 1984.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Oren Paris, III's Motion for Release Pending Appeal (Doc. 502) and Defendant Randell G. Shelton, Jr.'s Motion for Release Pending Appeal (Doc. 500) are both **DENIED**. Mr. Paris's deadline to report to the institution designated by the Bureau of Prisons where he shall begin his term of imprisonment remains 1:00 p.m. on Wednesday, October 10, 2018. Mr. Shelton's

deadline to report to the institution designated by the Bureau of Prisons where he shall begin his term of imprisonment remains 1:00 p.m. on Monday, October 8, 2018.

**IT IS SO ORDERED** on this  5th  day of October, 2018.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE